Good morning. May it please the Court. Ansel Ramey on behalf of the Appellant's Constellium Rolled Products. In this case, we've alleged several errors that the District Court erred by failing to independently rule on the issues of claim and issue preclusion, that the arbitrator manifestly disregarded the law by failing to apply the principles of res judicata and collateral estoppel, that the arbitrator made a clear misstatement of undisputed historical facts, he ignored the incorporation of this Court's Barton decision in the 2017 collective bargaining agreement, violated public policy that's inherent in principles of res judicata and collateral estoppel, and misinterpreted the applicable contract documents. The union correctly argues that the scope of judicial review of an arbitrator's decision is fairly circumspect, but this Court's precedent makes clear that relative to issues of res judicata and collateral estoppel, that those are perfectly appropriate for judicial review of an arbitrator's award. That comes out of the Wachovia case. In the Long John Silvers... Counsel, can I just ask you a question because I want to make sure I understand. Are you saying that the district court erred back at the preliminary injunction stage in sending this matter to an arbitrator in the first instance, that the district court held, right, preclusion is a procedural gateway issue under a house and that goes to the arbitrator. Are you saying that was wrong, or are you saying, no, that was fine, but at this point, federal court should nevertheless sort of review the preclusion holding de novo? Yes, we have to make a difference of the threshold issues of claim and issue preclusion to the arbitrator. That's not our assignment. Then why on earth, if everyone agrees that's a question for the arbitrator, I don't understand your argument that now we should act as though it wasn't an issue for the arbitrator and review it de novo or fully or independently or whatever you're saying. Right, because after the arbitrator makes a decision under the Wachovia case and the Long Island case throughout the country, the arbitrator's decision is still reviewed for manifest disregard of the law. Okay. So what happens once it goes to the arbitrator? So you're saying we should review this under the normal manifest disregard standard? That's correct, Your Honor. My only independent fault of the district court is that in applying that standard, which is the standard this court is going to apply and which standard the district court applied, the district court and this court is going to have to make an independent evaluation under a de novo standard of review. Do the doctrines of res judicata and or collateral style apply? I literally don't understand what you're talking about. If we're reviewing under the manifest disregard standard, how is consistent with doing de novo review? I just don't understand what you're... But I'm sorry, I don't mean... Let me give you a chance to explain. Sure. In the Long John Silver's case, the court held that the legal principle is clearly defined and not subject to reasonable debate, but the arbitrator refused to heed that principle. And here the arbitrator, from our perspective, manifestly disregarded the law in several specifics. He was aware of the law of res judicata and collateral estoppel because both parties briefed that extensively to the arbitrator. The arbitrator acknowledged that the application was an issue in the case. He indicated, if you read his decision, that he understood the law correctly. And indeed, he said if those, at least res judicata applies, he never really engaged in any analysis of collateral estoppel, but if res judicata applies, then the grievance is barred. But he chose to ignore this court's decision in Barton, which is a manifest disregard of the law. We do not dispute that a federal court and this court is not free to overrule an arbitrator's decision, right? But it's also equally true, from our perspective, that an arbitrator is free to overrule this court's decision. And it's our position that one cannot hold up the arbitrator's decision and this court's decision in Barton and reach any other conclusion other than they're irreconcilably conflicting. The arbitrator, on page 173 of the joint appendix, said the union specifically alleged that the company violated the ERISA and the LMRA, with these claims resting on the allegation that retirees had invested right to retiree health benefits. In this litigation, the arbitrator states, the union did not bring any claim based on whether the company's actions violated the party's collective bargaining agreement or other such contract interpretation claim. That's just manifestly wrong. On page 84 of the joint appendix, the first amended complaint in jury demand in the Barton class action. It is captioned, first amended complaint for breach of contract. Paragraph 3 of that complaint, which appears on page 85 of the joint appendix, says the successive labor agreements contain provisions which established Constellium's obligation to provide retiree medical benefits throughout retirement at no cost. Despite these contractual provisions, as well as other promises, Constellium unilaterally reduced coverage for class members. In count one of that complaint, the effective complaint in the Barton class action litigation, count one is captioned, a violation of collective bargaining agreements. It was an action for breach of contract. In the relief requested, which appears on page 96 of the joint appendix, they requested- Yes, counsel. I believe what you're describing here is that you think the arbitrator misread the law. You believe the arbitrator misread Barton and misapplied it. But that is not the standard we apply, is it? The standard is manifest disregard, although that's nowhere in the FAA. But we we talk about manifest disregard of the law, not misapplication. Arbitrators may get our law wrong, but I don't see that we are given the opportunity to review that and say, no, no, what we meant in this previous case was something different. You got the law wrong. The arbitrator acknowledged the law, attempted to The standard is that he, in the Long John Silver's case, that he was, in making his ruling, he was aware of the law, understood it correctly, found it applicable, and yet chose to ignore it in propounding his decision. And that's our argument. And the only way you can do that manifest disregard analysis is to analyze the arbitrator's decision in light of this court's decision in Barton. And if you do that, it's clear. If you look at the Barton decision, which appears on page 77 of the joint appendix, this court stated, each individual class member retired during the operation of one of seven CBAs between the union and one of Constellium's predecessors. Article 8 of each CBA, which appears is in substantially the same form, across all seven contained a provision for group health insurance benefits. And the court talks about what, all of those CBAs, and it's important for your analysis, all the relevant language is unchanged in the 2017 CBA before you. And then the court goes on, the booklet to which Article 15 refers, entitled Retiree Employees Group Insurance Program, serves as a summary plan description, SPD, of the group and health insurance benefits. Substantially identical language appeared in the previous editions of the SPD. Again, those provisions are unchanged in the case that was before the arbitrator. In addition to the various editions of Article 15 of the CBA and the SPD, the union and Constellium's predecessor, and another set of documents, which the parties call cap letters, to further parameters governing health benefits. And the court said, you know, the arbitrator finds, wait a minute, this is the first time any court has considered whether or not unilaterally changing retiree health benefits constitutes a breach of contract. This court's opinion defines what the Barton class action plaintiffs argued to you on page 78 of the joint appendix. The retirees argue that the parties intended Article 15 health benefits to vest and to continue beyond the duration of the CBA. Accordingly, they contend Constellium's unilateral alteration of those benefits breached its obligations under the CBA. And the court concluded the plain language of the CBA and the SPD clearly indicates that the retiree health benefits were not vested. Well, let's look what the arbitrator did with that on page 174 of the joint appendix. The language referring to the retiree health benefits in Article 15 of the 2017 agreement was left unchanged. He acknowledges that. The 2005 SPD issued by the company was also left unchanged. And finally, the 2017 cap letter was updated from previous versions, but it also contains certain language, like the language of Article 15 of the 2017 agreement, that remains largely unchanged. Specifically, the only change to the cap letter that was before this court was a change to increase the monthly supplement for future retirees, past retirees. So the arbitrator takes all of this and essentially overrules this court's decision in Barth. And from our perspective, that meets the manifest disregard standard. We cite cases from and I would certainly agree with the union in this regard. If we were only arguing that somehow the arbitrator misconstrued or misapplied the law relative to some general issues of law, it would be a different argument. We're talking about threshold issues of race judicata and collateral estoppel. And under those circumstances, it's our argument that all it's clear, and it was a manifest disregard of the law for the arbitrator not to apply the principles of race judicata and collateral estoppel to bar the claims. The, in the unions... Counsel, counsel, sorry. Sorry. So I mean, this isn't a case and I understanding this, right? Nobody here is arguing that the arbitrator doesn't have to give preclusive effect to federal court judgments, right? The giving preclusive effect, you know, if that is what is required under race judicata. I mean, I guess what I'm saying is there does seem to be sort of a threshold question, like maybe arbitrators don't have to apply race judicata and collateral estoppel to federal court judgments. But that's not what is at issue here. Everybody agrees those doctrines apply. The arbitrator purported to apply them, applied them to the facts of the case, and you think the if and if so, why you think there's something special about that legal question as opposed to other legal questions? Well, because this gets into the public policy argument. What occurred here from Constellium's perspective is it litigates this issue about when rights of retirees vest in health benefits, and the court determined they vest in the and can be changed unilaterally by the company. Constellium prevails on that. And so a year later, it issues a letter pursuant to this court's decision in Barton saying we're going to unilaterally change the retiree benefits who retired under previous CBAs, as this court said, we can do. And that goes to the arbitrator. And, you know, the final test under Wachovian Law and John Wachovian Law, he chose to ignore a law that he, in this case, the law ratio caught on collateral estoppel that he was aware of, he understood, found applicable, but just chose to ignore. And as I acknowledged from the beginning, it's a very high standard we have. But unless courts are going to enforce their judgment, the other thing you have to realize what this sort of leaves, if it's The current CBA ends in 2022. Well, during that five year period of the CBA, there could have been other arbitrations and other arbitrator awards. If you take what the arbitrator has done in the district court is affirmed to its logical conclusion. Well, none of those rulings are raised to the cot in the court cases that were decided during that CBA raised you to cut it. We'll just start all over again with the new 2022 CBA. We think it's untenable. We don't think that's the law applies, and therefore we ask that you either remain to the district court with directions to it, analyze the issues of ratio to cut or in collateral estoppel or with an order that the arbitrators were award be vacated. Thank you very much. Thank you, Mr. Raman. Mr Sharma. Thank you, Your Honor. Um, okay. Timers just reset. Uh, I'm in a Sharma, uh, police of court. I represent the steelworkers in this matter. Um, I have to say, I'm gonna change my outline a little bit. Um, based on Mr Ramey's comments made here is a little bit different than I expected him to make. He concedes that the at this issue is governed by the limited standard of review that applies to arbitration award. He concedes that the question of that really decides the case here. Um, once the issue is submitted for the arbitration side, uh, and the court applies its limited standard review, it cannot get into the merits. Somehow, Mr Ramey argues that under the manifest disregard standard, uh, the company is still entitled to de novo review of its inclusion argument. That's not how the manifest our argument, uh, standard works. In fact, this court has specifically said that it's not an invitation to get into the merits of the grievance or the arbitration. Um, and he points to the long John Silver standard, but that standard says that the arbitrator has to be aware of the law, understood it correctly, found it applicable to the case before him and yet chose to ignore it, uh, and propounding his decision. And then it talks about knowingly ignoring, uh, the arbitrator here clearly analyzed the issue. He, uh, evaluated the two parties, um, positions on the best you've gotten flattel and stopple questions, and he offered his conclusion to that. Um, and he found res judicata not to not meet the elements, the, uh, that the elements weren't met for res judicata, but he didn't knowingly ignore that it would apply. He clearly by analyzing the issue, uh, conceded that had the elements been, uh, met that that that would apply here. Uh, he found in his analysis, the elements don't apply. Um, and that is enough for this court to affirm. You did his job as he's required to do. Um, I don't know how the, uh, court is allowed to, uh, engage in DeNovo review here. I didn't quite understand, uh, Mr. Framie's argument as to why this would be, uh, treated differently than any other procedural, uh, arbitrability issue that gets submitted to the arbitrator. There's not none that I know of an arbitrate, a procedural arbitrability issue that gets submitted to an arbitrator in the first instance that this court would then have the opportunity to review DeNovo. Um, it wouldn't make a whole lot of sense to require that feature that parties, you need to submit this question to the arbitrator first. Uh, but ultimately it's us, the court who have the ultimate authority to decide that issue. Um, that would be sort of an inefficient issue, uh, a feature, which would undercut the whole purpose of arbitration, uh, which is supposed to be an efficient, uh, conclusion of these disputes. Um, also, uh, engaging in such a DeNovo review at this point, but also undercut the party's agreement as to how the issue, what issues would be arbitrated? Uh, the arbitration clause in this, uh, CBA says any differences between the parties as regards to, uh, the meaning or application, the provisions of CBA are to be submitted to the arbitration. Um, it's clear the parties expected, uh, issues that arise under the CBA, uh, to be arbitrated and to get an arbitrate, a final abiding award from the arbitrator. Um, and, and, uh, the, the court not engaged in DeNovo review would honor that, uh, agreement. Um, can I give you a hypothetical and just see, because the standard is pretty arduous because the parties decide to, uh, get things over to arbitration and sort of pick your, your venue and you, and you have to stick with it unless you can show basically what I would call almost nullification of the law. But here's the hypo and try to, in the focus, let's say, uh, it was a homeowner, uh, who had a sidewalk in front of their, their home and a, and he came and, you know, and so they, they slip slip and fall and they said, we're going to sue you. But somehow they had an arbitration agreement. They agreed to arbitrate that issue. And the law clearly says in that state that homeowners are not liable to third parties for accidents on the sidewalks. That's the law of the state, but they arbitrated. So, so the facts are clearly, this was a passer by, it happened on the sidewalk. And then the arbitrator said, well, so I find that there is liability because I think Mr. Ramey is saying that the facts are the same, that's why he read the meticulous, the facts are the same, the same parties, and, and, and, and sort of why wouldn't that law, so put that together, the hypothetical and sort of framework, you mean we couldn't say arbitrator, you ignored the law because you'll give a written decision where the, the, uh, the, the, the tort fees, a homeowner is liable for this, where the law says this, could you, we can look at that and say, we can determine from your finding that you ought to, but he never said, or she never said, the arbitrator never said, oh, I'm ignoring state law. It just sort of said, you know, I just see under these circumstances, I just think you should be, because you knew that tree root was coming up and you should have known it and you knew about it and you ignored it. That was a hazard. I find you should be liable in that sense. Do we have to stand by the arbitrator and say, because, well, you didn't say you ignored it, you did talk about the law, but you said that general law didn't apply here because the tree root was so obvious. Your Honor, I think, um, it, it sort of depends on, on the, in the hypothetical, what the arbitrator is saying. The arbitrator is saying, I understand that that law is there. Um, but I, in my analysis, I don't think it's applicable here. Yeah, because the tree root is so obviously uprooted and you should have known that that's the basis for it. I think you should have recognized the general law, that there's no liability to the third party, but says, no, because that tree was just 12 inches above the grade of the sidewalk. That was just so, and that, that overrides what otherwise would be the general law of no liability. So she would have recognized the law, grappled with it, found circumstances to rule otherwise. You mean we have to say, Oh, that's fine. Notwithstanding a clear, comprehensive law that says no liability. Yeah. Unfortunately, Your Honor, I do believe if that's the circumstance, there's, there's sort of two different ways that the arbitrator could answer. The answer is that I believe they are hypothetical is that the arbitrator analyzes the law and says, under my understanding of the law, it doesn't apply in this situation versus, uh, I simply don't, uh, I understand that the law is there, but I don't think it binds, let's say it's the first one. They say, I analyze the law. I've looked at the facts of this case. My understanding of the law is that it does not apply in this situation. I do believe that this court would have to defer to that. Uh, because the, uh, the court, the standard has been very well articulated. You don't look to legal error. You don't like to see if there's serious error on the part of the arbitrator. You simply see it to see, look to see if the arbitrator did his job or not. Um, and, and, and I believe it's in the Wachovia case, the sports says, uh, when the parties agreed to arbitrate these views, they run the risk of the arbitrator disagreeing with the way they understand the law to work. Um, and that's part of the idea here is that we've entered into an agreement for an alternative dispute resolution system in which an a quicker decision in the labor context. Oftentimes the arbitrary, the idea is the arbitrator understands the workplace better. Um, so they have knowledge that they bring to these disputes, uh, that the parties want, but one of the risks you run is that you get an arbitrator who might get things wrong. Um, but in agreeing to arbitrate, uh, that dispute and agreeing to not have a dispute like that take court, uh, that's one of the risks you run. Um, and I want to say that this, that that's a little bit of what you see. And there's these other decisions. It's the John Morrell decision for instance, where the eight circuit says that this is an issue for the arbitrator to decide inclusive effect of higher judicial, um, decision. And then they say, uh, and then that's reviewed, um, under the limited standard of review. Uh, then that decision, the arbitrator simply said, I'm not bound by res judicata. I will stop all because he did, this was dealt with a higher, uh, jury award. He said, well, I don't know sort of what the jury instructions were. I don't know what the basis of the jury report was. I don't know. I know I'm not going to be bound by res judicata here. And the court did vacate, uh, because there it's, that's the difference between, um, the, the, the idea of our case and sort of, uh, where a court could vacate, um, is that in our case, the arbitrator didn't ignore it. He understood that res judicata and collateral estoppel were issues in this case, he lists them as issues that need to be decided. Uh, and he analyzes it and he provides his answer, uh, to that question. Um, and that's, uh, enough for the court to stand down on reviewing, uh, the merits of his decision. He did his job, he provided his determination, uh, and that's what the parties have bargained. Um, and that's what, uh, the court needs to let stand. Now I will say, uh, just because, uh, you, you mentioned it, that the, uh, you mentioned Mr. Ramey's argument and they do argue, uh, that this is the same fact, same transaction, but I want to, I want to raise that, um, that the unilateral changes that prompted the grievance in 2018 occurred a year and a half after Barton, uh, the Barton decision was issued. And this court has been clear that res judicata does not apply to the positive action based on events that occurred after the fire litigation, uh, in Ohio Valley Environmental Coalition versus Aratoma Coal Company. I'm going to give you the citation, but it's not, uh, this is 556 F3rd 177. The court explained that the fact that two suits involved, two suits that involve challenges to very similar courses of conduct doesn't matter for a res judicata purpose. A prior judgment cannot be given the effect of extinguishing claims, which did not even then exist. Uh, so it's not the same facts that, uh, Barton was based on unilateral changes that occurred in 2013. Those unilateral changes being, uh, the freezing of the Medicare reimbursement premium, uh, that the company was offering at the time and the extension of the cap letter to pre 2003 retirees. Um, and the unilateral changes that prompted the union's grievance, uh, were announced in 2018, uh, and that was the total elimination of, uh, group insurance coverage for the affected retirees, uh, to be replaced by an offer of $4,500 in HRA to go purchase their own individual Medicare advantage. Uh, so completely different unconnected, uh, events and, um, and the second set not having occurred at the time. Uh, the Barton was decided. Therefore they could not have been brought, uh, within that litigation. Um, as long as I'm, I'm not going, they couldn't have been brought in that the claim couldn't have been brought, the legal claims couldn't have been brought in, uh, or in any way, because it would have been subject to the arbitration agreement of the CBA that was in place at that time. Um, if the company has raised a number of other, uh, bases for taking the award, uh, none of those meet standard. Uh, and we, uh, submitted that on briefs. I, if anybody, there aren't any more questions on any of those, or if any of the judges have any more questions for me, um, I think I'll just rest on my briefing then on those other issues. Thank you very much. Councilman. Mr. Rankin, you have some time reserved. Thank you, Your Honor. Um, one of the cases we rely on is the New Jersey Bell case. And in that case, the third circuit recognized, as we've conceded, the merits of an arbitral award are not subject to plenary review by a court. The third circuit was careful to say, quote, the merits, uh, the court may examine the grounds upon which the arbitrator rested his or her decision in order to ensure those grounds are appropriate, specifically, quote, when a federal court is presented with the contention that a prior federal judgment determined issues sought to be relitigated in an arbitral forum, it must first determine the effect of the judgment, and that's all we're asking this court, we're not asking this court to conduct anything other than the third circuit did. We also cite the American train dispatchers case from the DC, uh, court of, uh, DC court, quote, courts have the right of plenary review when asked to determine the preclusive effects of a federal judgment on relitigation of the same issues in an arbitral forum. And that's what we have here. Counsel, counsel, counsel, those cases don't apply the manifest injustice standard. They say they're not doing that. They're giving, they're applying plenary review. The manifest injustice standard does not apply. The first thing you said to us today was that you're not arguing for that. We're under the manifest injustice standard. So honestly, what is happening here? Well, those cases from our perspective are, even though they're, they don't say they're applying the manifest injustice standard, are essentially doing it. As a practical matter, that's what they're doing. They are taking a look at an arbitrator's acknowledgment of a prior decision, having the issue raised of either collateral, stoppable, ratio, decada, or both, acknowledging that it applies, and then just blatantly ignoring it, effectively overruling the federal court that entered the judgment. And it's our view that, that federal courts, including this court, have the One argument that was made by the union was somehow that the arbitrator was enforcing the CBA. The CBA, by its terms, states that the constituent recognizes the union as the exclusive bargaining agent for its employees. It defines what the term employees are. In article 15, it only, it specifies that the provisions related to retirement benefits only apply to retirees under the 2017 CBA, not prior employees. And the 2005 SPD, which this court interpreted in Barton, specifically says that it does not apply to past retirees, it only applies to employees. And also states, quote, the company reserves the right to change or change its terms and conditions with regard to current, past, or future employees, retirees, and beneficiaries. This document is not a promise to always provide any particular compensation or benefit. So when the argument was made, all the arbitrator was doing was enforcing the CBA, I just read you the provisions. He's manifestly not doing that. And again, we're only asking, you know, this court to enforce its decision in not to second guess the arbitrator and not to overrule him just as a matter of law, but on these threshold issues of race judicata and collateral estoppel. Thank you very much. Thank you so much, counsel. Thank you for your arguments both, and we appreciate it very much. We can't meet you as we would normally, but know that we much appreciate it and wish you well and you'll be safe. Thank you. Thank you.
judges: Roger L. Gregory, Pamela A. Harris, Allison J. Rushing